1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CRYSTAL MORROW, THOMAS MORROW,

                              Plaintiffs,

          v.

ETHICON, INC., JOHNSON & JOHNSON,

                              Defendants.

CASE NO. C20-5062 BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFEDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's (collectively "Ethicon") motion for summary judgment. Dkt. 62. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I.  PROCEDURAL HISTORY

On December 5, 2013, Plaintiffs Crystal and Thomas Morrow ("Plaintiffs") filed suit against Ethicon and Ethicon, LLC in the MDL *In re Ethicon, Inc. Products Liability Litigation*, MDL No. 2327, located in the Southern District of West Virginia. Dkt. 1. On

June 28, 2019, Plaintiffs filed a notice of voluntary dismissal with prejudice as to

Defendant Ethicon, LLC. Dkt. 18. On January 8, 2020, the Southern District of West

Virginia dismissed Ethicon, LLC as a defendant. Dkt. 31.

On October 18, 2018, Ethicon filed a motion for partial summary judgment. Dkts.

24, 25. On October 25, 2018, Plaintiffs responded and indicated that they would file a

supporting memorandum of law, but no memorandum was ever filed. Dkt. 26. On

January 24, 2020, the case was transferred to this Court from the Southern District of

West Virginia. Dkt. 37. As the Southern District of West Virginia did not resolve

Ethicon's motion for partial summary judgment prior to transfer, the parties stipulated to

the dismissal of certain counts.[1] Dkt. 52. On June 10, 2020, the Court granted the

stipulation, dismissing the agreed-to counts. Dkt. 53.

On June 11, 2020, Ethicon moved for leave to file supplemental summary

judgment briefing. Dkt. 54. On July 24, 2020, the Court granted Ethicon's motion. Dkt.

61. On August 6, 2020, Ethicon filed a supplemental motion for summary judgment. Dkt.

52. On August 24, 2020, Plaintiffs responded. Dkt. 64. On August 28, 2020, Ethicon

replied. Dkt. 65.

---

[1] The parties stipulated to the dismissal of Plaintiffs' Negligence (Count I), Strict
Liability – Manufacturing Defect (Count II), Strict Liability – Failure to Warn (Count III), Strict
Liability – Defective Product (Count IV), Common Law Fraud (Count VI), Fraudulent
Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count
IX), Negligent Infliction of Emotional Distress (Count X), Breach of Express Warranty (Count
XI), Breach of Implied Warranty (Count XII), Violation of Consumer Protection Laws (Count
XIII), Gross Negligence (Count XIV), and Unjust Enrichment (Count XV) claims. Dkt. 53.

On October 14, the Court reserved ruling on the motion for summary judgment and granted Plaintiffs leave to file a statement of material facts as to the loss of consortium claim. Dkt. 66. On October 20, 2020, Plaintiffs filed a supplemental statement of material facts. Dkt. 67. On October 28, 2020, Ethicon replied. Dkt. 68.

## II.   FACTUAL BACKGROUND

Plaintiffs Crystal Morrow ("Mrs. Morrow") and her husband Thomas Morrow ("Mr. Morrow") bring claims against Ethicon arising out of Mrs. Morrow's surgical implantation of TVT—a transvaginal mesh sling—to treat her stress urinary incontinence ("SUI"). Dkt. 1; Dkt. 64-1, Plaintiff Fact Sheet ("PFS"), at 2. On August 7, 2001, Mrs. Morrow was surgically implanted in Washington with a TVT device by Dr. Robert Modarelli. Dkt. 1; PFS at 2.

Mrs. Morrow began experiencing severe injuries and complications beginning in 2002, including vaginal and pelvic pain, infections, urinary incontinence, and pain during intercourse. PFS at 3–4. Upon experiencing these symptoms, Mrs. Morrow sought treatment from her primary care physician, Dr. Jesse Bouma. Dkt. 64-2, Deposition of Crystal Morrow ("C. Morrow Dep."), at 64:7–24. Dr. Bouma prescribed Mrs. Morrow a cream to alleviate her pain during sexual intercourse, which Mrs. Morrow used on and off for the next five to six years. *Id.* at 64:20–65:11. Mrs. Morrow testified that Dr. Bouma was unsure as to the cause of her painful intercourse and urinary tract infections but that "it could be related to what was going on inside[.]" *Id.* at 65:18–25. Mrs. Morrow further testified that Dr. Bouma could feel her mesh implant and said that her symptoms could be related to the mesh. *Id.* at 66:1–12. When asked how she felt about the mesh being related

1    to her symptoms, Mrs. Morrow stated that she found the potential connection

2    "interesting." *Id.* at 66:24–25. She also stated in 2003 to 2004, when she first started

3    experiencing her symptoms, she "was questioning about what was taking place." *Id.* at

4    125:1–3.

5          From 2007 until 2012, Mrs. Morrow was treated by Dr. Kent Vye in Yakima,

6    Washington for her continued pain and infections as they occurred. PFS at 4. Mrs.

7    Morrow testified that Dr. Vye did not indicate that her persistent symptoms were related

8    to her mesh implant, and rather "it was something that [she] was going through." C.

9    Morrow Dep. at 125:24–126:9. Because of her experiences with her doctors, Mrs.

10   Morrow states that she did not first attribute her symptoms to her TVT implant until she

11   saw a television commercial in June 2013. PFS at 4. Though Mrs. Morrow also testified

12   that "[Dr. Bouma] said it could be related, but I didn't really look up any facts on the

13   Internet or I didn't really do any research on it. I just kind of put it in the back of my

14   mind." C. Morrow Dep. at 68:5–10.

## III.  DISCUSSION

16         Ethicon moves for summary judgment on Plaintiffs' remaining claims: Strict

17   Liability – Design Defect (Count V), Loss of Consortium (Count XVI), Punitive

18   Damages (Count XVII), and Discovery Rule and Tolling (Count XVIII). Dkt. 61 at 1–2.

19   **A.    Summary Judgment Standard**

20         Summary judgment is proper only if the pleadings, the discovery and disclosure

21   materials on file, and any affidavits show that there is no genuine issue as to any material

22   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

1    The moving party is entitled to judgment as a matter of law when the nonmoving party

2    fails to make a sufficient showing on an essential element of a claim in the case on which

3    the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

4    323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

5    could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

6    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

7    present specific, significant probative evidence, not simply "some metaphysical doubt").

8    Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

9    supporting the claimed factual dispute, requiring a judge or jury to resolve the differing

10   versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.*

11   *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

12           The determination of the existence of a material fact is often a close question. The

13   Court must consider the substantive evidentiary burden that the nonmoving party must

14   meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

15   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

16   issues of controversy in favor of the nonmoving party only when the facts specifically

17   attested by that party contradict facts specifically attested by the moving party. The

18   nonmoving party may not merely state that it will discredit the moving party's evidence

19   at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

20   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

21   nonspecific statements in affidavits are not sufficient, and missing facts will not be

22   presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.      Punitive Damages and Discovery Rule and Tolling**

Ethicon moves for summary judgment on Plaintiffs' Punitive Damages and Discovery Rule and Tolling claims, arguing that these are not recognized causes of action in Washington. Dkt. 62 at 7. Plaintiffs, on the other hand, assert that they may properly assert the discovery rule as a doctrine to toll the commencement of the limitations period and make a claim for punitive damages at trial. However, Ethicon is correct that Washington law prohibits punitive damages in a product liability action. *Laisure-Radke v. Par Pharm., Inc.*, 426 F. Supp. 2d 1163, 1174 (W.D. Wash. 2006). Ethicon is also correct that the discovery rule is not its own cause of action, but rather is a doctrine that determines when a cause of action accrues. *See Green v. A.P.C.*, 136 Wn.2d 87, 95 (1998) (explaining the application of Washington's discovery rule). The Court therefore grants Ethicon's motion for summary judgment as to Plaintiffs' Punitive Damages and Discovery Rule and Tolling claims.

**C.      Strict Liability – Design Defect**

In its supplemental motion for summary judgment, Ethicon argues for the first time that Plaintiffs' Design Defect claim is time-barred. Dkt. 62. The Washington Products Liability Act ("WPLA") governs all claims for product-related harm in Washington. RCW 7.72.010(4). Under the WPLA, a claim must be brought within "three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause." RCW 7.72.060(3). It does not appear that the parties dispute whether the WPLA's statute of limitations apply to Plaintiffs' claim;

rather, the parties disagree over when Plaintiffs' claim accrued and when the statute of limitations began to run.

A statute of limitations begins to run when the underlying claim accrues—that is when a party has discovered or should have discovered the facts to support a cause of action. *Green v. A.P.C.*, 136 Wn.2d 87, 95 (1998). Washington requires "that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm." *Id.* at 96. To that end, Washington courts have held that "one who has notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable inquiry would disclose." *Id.* (quoting *Hawkes v. Hoffman*, 56 Wash. 120, 126 (1909)). But the question of when a plaintiff should have discovered the facts to support a cause of action so as to trigger the statute of limitations is ordinarily a question of fact. *Id.* at 100; *see also Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 34–35 (1993); *Honcoop v. State*, 111 Wn.2d 182, 194 (1988). The defendant bears the initial burden of showing the absence of an issue of material fact. *Green*, 136 Wn.2d at 100; *Young v. Key PharMrs. Inc.*, 112 Wn.2d 216, 225 (1989).

Here, Ethicon argues that Mrs. Morrow received notice in 2002 that her symptoms could be related to her implant by Dr. Bouma. Dkt. 62 at 5. According to Ethicon, Mrs. Morrow was told that her symptoms could be related to her TVT implant and that was sufficient to place her on inquiry notice. Ethicon asserts that her claims could have been discovered within the limitations period but Mrs. Morrow chose not to research the issues any further. It further asserts that her admitted awareness of her injuries and the potential

1    connection of the injuries to the TVT implant is sufficient, as a matter of law, to trigger

2    the duty to investigate and the statute of limitations. Ethicon thus argues that Mrs.

3    Morrow was placed on inquiry notice in 2002 and that the statute of limitations on

4    Plaintiffs' design defect claim has run.

5           But Ethicon fails to address whether Mrs. Morrow would have actually discovered

6    that she had a defective product in 2002. Inquiry notice holds that "one who has notice of

7    facts sufficient to put him upon inquiry is deemed to have notice of all acts which

8    reasonable inquiry would disclose." *Green*, 136 Wn.2d at 96 (internal quotation omitted).

9    Even if Mrs. Morrow researched further after Dr. Bouma told her that her symptoms

10   could be related to the TVT, the record is silent as to whether a reasonable inquiry would

11   have disclosed issues with her TVT or a defective TVT. The Court therefore may not

12   reasonably find that Mrs. Morrow was on inquiry notice about her TVT issues when

13   evidence is lacking about what she would have discovered upon inquiry.

14          Plaintiffs additionally argue that the discovery rule found in *North Coast Air*

15   *Services, Ltd. v. Grumman Corp.*, 111 Wn.2d 315 (1988), is applicable to this case, and

16   under the principles of *North Coast Air* their claim is not time barred. Dkt. 78 at 4. In

17   *North Coast Air*, a pilot died in a plane crash, and the initial investigation attributed the

18   cause to the pilot's error and concluded that the plane had no mechanical defects. 111

19   Wn.2d at 317. The plaintiff—the pilot's father—learned eleven years later that the crash

20   was a result of a defect in the plane only after hearing reports of similar crashes. *Id.* at

21   317–18. The plaintiff subsequently filed suit for products liability claims, and the

22   defendant moved to dismiss the claims, arguing that they were time barred. *Id.* at 318–19.

1    The Washington Supreme Court therefore addressed whether the statute of limitations for

2    a products liability case begins to run when the harm is or should have been discovered or

3    whether "is it a question for the trier of fact to determine when 'in the exercise of due

4    diligence' the product's relationship to the injury should have been discovered, with the

5    statute of limitations running from that date." 111 Wn.2d at 317. The court rejected the

6    defendant's argument that a claim accrues when the claimant knew or should have known

7    the immediately apparent basis for the harm, *id.* at 322–23, and rather held that the statute

8    of limitations begins to run when the claimant discovered, or should have discovered, the

9    factual causal relationship between the alleged defective product and harm, *id.* at 319.

10   Importantly, the Washington Supreme Court held that whether the plaintiff in the case

11   knew or should have known about the cause of harm was an unresolved question of fact.

12   *Id.* at 318.

13       Plaintiffs argue that Mrs. Morrow first attributed her injuries to her TVT implant

14   in 2013 when she saw a television commercial and that there are questions of fact that

15   preclude summary judgment. Dkt. 64 at 7. Plaintiffs assert that Dr. Bouma was not sure

16   about what was causing Mrs. Morrow's injuries and that Dr. Vye never indicated that the

17   TVT was an issue and rather thought Mrs. Morrow's injuries was just something she was

18   going through. Plaintiffs thus argue that "there is no evidence that any medical providers,

19   including Dr. Bouma and Dr. Vye, told Mrs. Morrow that the TVT or any of its

20   properties were defective and thus caused her injuries." *Id.* at 9. Under the principles of

21   *North Coast Air*, Plaintiffs argue that the statute of limitations did not begin to run until

22   Mrs. Morrow became aware that a defective product caused her injuries. Plaintiffs argue

1   that there are questions of facts as to whether Mrs. Morrow knew or should have known

2   that her injuries were attributable to a TVT.

3       Ethicon responds to this argument, asserting that Plaintiffs "bear the burden of

4   proving that the facts constituting the claim were not and could not have been discovered

5   by due diligence within the applicable limitations period." Dkt. 65 at 7 (quoting *Clare v.*

6   *Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 603 (2005)). Here, Ethicon argues that

7   Plaintiffs have not met their burden because Mrs. Morrow admitted to being aware of the

8   potential connection between her TVT implant and her injuries. Yet, "whether a party

9   exercised due diligence is normally a factual issue," and only when reasonable minds can

10  reach one conclusion can questions of fact be determined as a matter of law. *Clare*, 129

11  Wn. App. at 603 (citing *Winbun v. Moore*, 143 Wn.2d 206, 213 (2001); *Allen v. State*, 60

12  Wn. App. 273, 276 (1991), *affirmed*, 118 Wn.2d 753 (1992)).

13      The Washington Supreme Court held in *North Coast Air* whether the plaintiff

14  knew or should have known about the cause of harm was a question of fact. 111 Wn.2d at

15  328. The Court agrees with Plaintiffs that questions of fact exist here as to whether Mrs.

16  Morrow should have discovered the TVT deficiencies prior to 2013. It remains unclear

17  whether physicians prior to 2013 could and did attribute injuries like the ones Mrs.

18  Morrow experienced to mesh implants. The Court therefore declines to hold as a matter

19  of law that Mrs. Morrow failed to exercise due diligence and should have discovered the

20  cause of her harm. It remains a question of fact whether the statute of limitations has run

21  on Plaintiffs' claim.

22

**D.    Loss of Consortium**

Finally, Ethicon moves for summary judgment on Mr. Morrow's loss of consortium claim. Loss of consortium is typically thought of as a "loss of society, affection, assistance and conjugal fellowship, and . . . loss or impairment of sexual relations" in the marital relationship. *Ueland v. Pengo Hydra-Pull Corp.*, 103 Wn.2d 131, 132 n.1 (1984) (citing *Black's Law Dictionary* 280 (5th ed. 1979)). In Washington, a loss of consortium claim is a separate and independent claim rather than a derivative claim. *Green*, 136 Wn.2d at 101. A loss of consortium claim accrues when the spouse first experiences injury due to loss of consortium. *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 776 (1987).

Ethicon argues that, as its own claim, the loss of consortium claim is time barred because Mrs. Murrow testified that her painful intercourse began in approximately 2002. Dkt. 62 at 6–7. While Plaintiffs assert that Mr. Morrow did not know that his injuries were related to the defective product until 2013, Dkt. 67 at 2, Plaintiffs do not provide Mr. Morrow's declaration or any specific facts showing the existence of a genuine issue for trial about when the loss of consortium claim accrued. The evidence provided by Plaintiffs shows when Mrs. Morrow first became aware that her injuries were connected to her TVT implant but is silent as to when Mr. Morrow himself first experienced his injury. Missing facts will not be presumed, *Lujan*, 497 U.S. at 888–89, and the Court finds that there is no genuine dispute of material fact as to when Mr. Morrow first experienced injury. The Court thus grants Ethicon's motion for summary judgment on Plaintiffs' loss of consortium claim.

1

## IV.   ORDER

2     Therefore, it is hereby **ORDERED** that Ethicon's supplemental motion for

3 summary judgment, Dkt. 62, is **GRANTED** in part and **DENIED** in part.

4     Dated this 12th day of November, 2020.

5

6

_____
7                      BENJAMIN H. SETTLE
                       United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 12